UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
A. DARCY DECASTRO,

                Plaintiff,

  –against–                                                **MEMORANDUM &**
                                                                  **ORDER**
RAY LAHOOD, SECRETARY, U.S.
DEPARTMENT OF TRANSPORTATION,            04-CV-2129 (JMA)
                                                                  05-CV-3528 (JMA)
                Defendant.
-------------------------------------------------------------------------X

A P P E A R A N C E S:

Ira S. Newman
The Law Offices of Ira S. Newman
98 Cutter Mill Road
Suite 441-S
Great Neck, NY 11021
(516) 487-7375
    *Attorney for Plaintiff*

John Vagelatos
Assistant United States Attorney
Eastern District Of New York
271 Cadman Plaza East
Brooklyn, NY 11201
(718) 254-6182
    *Attorney for Defendant*

**AZRACK, United States Magistrate Judge**

In these consolidated actions, plaintiff A. Darcy DeCastro, an asthmatic, brings claims under the Rehabilitation Act of 1973 ("Rehabilitation Act" or "Act"), 29 U.S.C. §§ 791 and 794, alleging that her employer, the Department of Transportation, failed to accommodate her condition and failed to prevent a hostile work environment by allowing other employees to smoke in the air traffic control tower where she worked. She further alleges that her supervisors

1

retaliated against her for filing a discrimination claim with the Equal Employment Opportunity Commission ("EEOC").[1] On February 26, 2008, the parties consented to my jurisdiction on all matters. (Dkt. No. 30.) Now before me is defendant's motion for partial summary judgment dismissing plaintiff's failure to accommodate and hostile work environment claims. The parties agreed to limit the instant motion to one issue: whether plaintiff's asthma is a disability within the meaning of the Rehabilitation Act. (Stipulation ¶ 8, Mar. 14, 2008.) For the reasons discussed below, defendant's motion is granted and plaintiff's failure to accommodate and hostile work environment claims are dismissed.

## I. BACKGROUND[2]

Plaintiff A. Darcy DeCastro ("DeCastro" or "plaintiff"), now thirty-eight, was diagnosed with asthma at age eleven or twelve. DeCastro Dep. at 121. At all times relevant to this action, she worked for the Federal Aviation Administration ("FAA")[3] as an air traffic controller at Teterboro Air Traffic Control Tower in Teterboro, New Jersey ("Teterboro Tower") and was a member of the National Air Traffic Controllers Association ("NATCA"), a labor union. Id. at 13–14; 28–29.

**A. Smoking at Teterboro Tower**

When plaintiff first started working at Teterboro Tower in February or March of 2001, smoking was permitted in the kitchen, break room and control tower. DeCastro Dep. at 341;

---

[1] In her complaints, plaintiff also raised discrimination and harassment claims under Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991. However, she has since limited the actions to the above-described claims. See Stipulation ¶ 2, Mar. 14, 2008.

[2] The facts are taken from the parties' Rule 56.1 statements, supporting documents and deposition transcripts. Factual disputes are noted. Citations to "Ex." refer to exhibits attached to the declaration of defense counsel Steven M. Warshawsky. Citations to Def'd 56.1 and Pl. 56.1 refer to the parties' Rule 56.1 statements. Citations to Def'd Mem and Pl. Mem. refer to the parties memoranda of law in support or opposition to summary judgment.

[3] The FAA is a subdivision of the United States Department of Transportation. Def'd 56.1 ¶ 3. At the filing these actions, plaintiff named the then Secretary of Transportation, Norman Y. Minetta, in his official capacity, as defendant. The current Secretary of Transportation is Ray LaHood, who took office on January 29, 2009. See http://www.dot.gov/bios/lahood.htm (last visited Apr. 17, 2009).

105–6. The smoking policy was dictated by a memorandum of understanding between the FAA and NATCA ("MOU #31").[4] Id. at 342–43. Despite this policy, plaintiff detected signs of smoking outside the designated zones on several occasions throughout the relevant period. Id. at 344–46. According to plaintiff, the secondhand smoke that she inhaled during these instances of unauthorized smoking caused her to experience seven asthma attacks between April 2003 and January 2006.[5] Def'd 56.1 ¶¶ 60, 64, 68, 75, 78, 79, 83. Prior to each attack, plaintiff saw or smelled cigar or cigarette smoke in or near the break room or control tower and twice witnessed employees smoking in violation of the smoking policy. Id. In all but one instance, plaintiff left work and sought immediate medical attention upon the onset of the attack. Id. None of the attacks required plaintiff to be hospitalized overnight. Id. Plaintiff reported all but one attack as a workplace injury shortly after it occurred and notified her superiors, in writing, of the incidents and her worsening asthma. Id.

Plaintiff's superiors at Teterboro Tower responded to plaintiff's first asthma attack by changing the smoking policy. A few days after the attack, they issued a memorandum to all personnel explaining that there would be "no smoking in the facility except during single person staffing situations and only then in the [control tower]" and that there would be "strict enforcement of compliance." Carbone Mem., dated Jan. 22, 2002 (Ex. 5); DeCastro Dep. at 353–54, 358–59; All Personnel Mem., dated Jan. 22, 2002 (Ex. 6). Additionally, "no smoking"

---

[4] MOU #31 was a settlement agreement entered into by the FAA and NATCA in October 1992 to resolve an unfair labor practices charge concerning workplace smoking rules. Mem. of Understanding, dated Oct. 8, 1992 (Ex. 13). It provided, in relevant part, that "indoor smoking shall be allowed within FAA Terminal facilities and shall be negotiated locally on a site–specific basis"; that "in terminals where only one person is used to staff a shift, cigarette smoking shall be permitted within the working environment"; that "smoking areas shall not be established in areas that non–smokers are required to use"; that "no cigar or pipe smoking shall be permitted in a facility"; and that "no tower terminal may ban smoking within a facility." Id.

[5] Plaintiff's first secondhand smoke-induced asthma attack at Teterboro Tower occurred on January 17, 2002. DeCastro Dep. at 184–85. However, the relevant time period for this action is January 2003 through December 2006. Stipulation ¶ 4.

3

signs were posted around the facility. DeCastro Dep. at 372–73. Smoking in the facility diminished after this policy was instituted but eventually "reverted to what it was" after a few months. Id. at 355–57. By September 2002, employees smoked just as frequently in the control tower and "sometimes" smoked in plaintiff's presence. Id. at 361–66.

In August 2003, the FAA instituted a total smoking ban at Teterboro Tower after concluding that MOU #31 conflicted with federal regulations that prohibit all smoking inside federal buildings. Sorrentino Mem., dated Sept. 11, 2003 (Ex. 14). The smoking ban took effect on October 11, 2003. DeCastro Dep. at 399–400. However, plaintiff continued to smell smoke in the tower on various occasions and continued to experience asthma attacks, which she attributes to secondhand smoke. Two of plaintiff's colleagues, Tina Verret ("Verret") and John Reyes ("Reyes"), confirmed plaintiff's reports of unauthorized smoking at Teterboro Tower.[6]

**B. Plaintiff's Asthma History**

Triggers for plaintiff's asthma include dust, strong odors, certain pets and stress. DeCastro Dep. at 202, 204–205, 211, 241. Plaintiff first told her physician that secondhand smoke was also a trigger on January 18, 2002, the day after her first attack at Teterboro Tower. Pally Dep. 94–95; 122–23. Since January 2000, plaintiff has not had any asthma attacks requiring medical treatment other than the attacks she experienced at Teterboro Tower. DeCastro Dep. at 285–86. During an attack, plaintiff has difficulty breathing and speaking. Id. at 248–49; 251–52. She also experiences shortness of breath, wheezing and coughing. Id. at 300–2. When plaintiff is not having an asthma attack, her ability to breathe and speak is not substantially limited. Id. at 251–52; Pally Dep. at 106–7; Reedy Dep. at 68–71. Plaintiff asserts

---

[6] Verret testified that during 2003, she witnessed employees smoking inside the facility "maybe once a week, once every two weeks," including "occasional" smoking in the tower cab. Verret Dep. at 75–76. She also smelled cigar smoke in the tower cab on one occasion in 2004 but does not recall seeing any employees smoking inside the facility during that calendar year. Id. at 77–78. Reyes did not see any employees smoking in unauthorized areas in 2004, but he smelled smoke inside the facility two or three times that year. Reyes Dep. at 73–75.

that she "frequently" has asthma–related sleeping problems and loses a "couple of hours" of sleep one or more times per week, due to wheezing and the stimulant effect caused by her inhaler. DeCastro Dep. at 253–55. The sleep loss reduces her "energy level," but does not affect her ability to perform her duties at work or to care for her children. Id. at 255–56. Plaintiff's treating physician, Dr. Reedy, testified that plaintiff's ability to sleep was not significantly restricted. Reedy Dep. at 69–71.

Plaintiff is able to perform household chores, including laundry, grocery shopping, washing dishes, cleaning the kitchen and garage, changing the bedding, and bathing and feeding her two "hypoallergenic" poodles. DeCastro Dep. at 206–7; 235–36; 202–3. These activities do not cause plaintiff to experience asthma attacks. Id. at 208. However, plaintiff's husband performs many or most of the chores, including those chores that involve exposure to dust or significant physical activity. Id. at 206–7. Plaintiff has two young daughters aged eight and six whom she regularly bathes, feeds, and puts to bed. Id. at 234–35. She also plays board games with them, reads to them, and watches them while they ride their bikes and play in the pool. Id. at 221–24. However, during times in which she was recovering from an exacerbation of her asthma, she was limited in her ability to take care of her daughters. Id. at 233–235.

Plaintiff is able to engage in physical activity. She can walk for more than 30 minutes without wheezing, though she sometimes gets winded. DeCastro Dep. at 216; 218. She climbs stairs at both home and work numerous times each day. Id. at 225–26; 262–64. She sometimes experiences wheezing as a result but her inhaler relieves the symptoms. Id. Plaintiff believes that her asthma would prevent her from working in a position that required running or lifting things outside. Id. at 244. At one point while working at Teterboro Tower, plaintiff was a member of a health club where she used weightlifting machines and walked or jogged in place

approximately twice per week for thirty minutes each session. Id. at 232–33. Her doctors have advised her to exercise more. Id. at 231.

Plaintiff has been treated by two personal physicians for her asthma. Their assessments of the severity of her condition have included "moderate" and "controlled with medication," Pally Dep. at 72, 75–77, "severe," id. at 96, "mild intermittent," Reedy Dep. at 21, "mild persistent," id. at 65–66; 81, and "moderate persistent." Id. at 32. During 2003, plaintiff's asthma worsened from "intermittent" to "persistent." Reedy Dep. at 66. Plaintiff's medical expert described her asthma as "severe persistent asthma." Panettieri Dep. at 5. As an air traffic controller, plaintiff is also required to undergo annual or biennial physical examinations by FAA physicians and to maintain satisfactory health as a condition of her employment. DeCastro Dep. at 125–26. She reported her asthma at each FAA examination and has never has been medically disqualified from serving as an air traffic controller. Id. at 126. Rafael Martinez, the Air Traffic Manager at Teterboro Tower from January 2003 to August 2003, described plaintiff's asthma as "serious." Martinez Dep. at 140 (Decl. of Ira S. Newman Ex. 1 ("Newman Declaration")). Marion Al Jennings, the Newark Hub Manager with authority over Teterboro Tower wrote regarding plaintiff that "we have a severe [asthmatic] at the facility that cannot accept smoke in the facility in any manner." Jennings Dep. at 92 (Newman Decl. Ex. 3).

## II. DISCUSSION

Plaintiff asserts that defendant violated the Rehabilitation Act, which protects federal employees from workplace discrimination based on disability, by failing to prevent the secondhand smoke at Teterboro Tower that induced her seven asthma attacks. Defendant moves for partial summary judgment on the sole ground that plaintiff's asthma is not a disability within the meaning of the Act.

**A. Summary Judgment Standard**

Summary judgment should be granted if the moving party establishes that "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). To defeat summary judgment, the opposing party must come forward with specific facts showing that there is a "genuine issue of material fact" for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (emphasis in original). The opposing party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir. 1984) (citation and quotation marks omitted). Supporting affidavits must be based on personal knowledge, must set forth facts that would be admissible in evidence, and must show affirmatively the affiant's competence to testify to the matters stated therein. Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e).) In considering a motion for summary judgment, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004) (citation and quotation marks omitted).

**B. Plaintiff is Not Actually "Disabled" Under the Rehabilitation Act**

The Rehabilitation Act is governed by the same standards as the Americans with Disabilities Act of 1990 ("ADA"). See 29 U.S.C. § 791(g); Rodriguez v. City of New York, 197 F.3d 611, 618 (2d Cir. 1999). To bring discrimination claims under either the Rehabilitation Act or ADA, the plaintiff must be disabled. D'Amico v. City of New York, 132 F.3d 145, 150 (2d Cir. 1998). A person is disabled if she has "a physical or mental impairment that substantially

7

limits one or more major life activities." Giordano v. City of New York, 274 F.3d 740, 747 (2d Cir. 2007) (quoting 42 U.S.C. § 12102(2)). Thus, to find that an individual is disabled, the court must: (i) determine that the individual suffers from a physical or mental impairment; (ii) identify a major life activity, if any, that is limited by the impairment; and (iii) determine that the impairment "substantially limits" the major life activity. See Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 641 (2d Cir. 1998) (citing Bragdon v. Abbott, 524 U.S. 624, 631 (1998)). Here, plaintiff claims that her asthma substantially limits her ability to work, breathe, sleep, and speak. Defendant concedes that plaintiff's asthma is an impairment and that the activities she identifies are major life activities within the meaning of the Act but argues that she is not "substantially limited" in performing these activities.

An individual is substantially limited if she is either "[u]nable to perform" the activity or if, as compared to an average person, she is "significantly restricted" as to "condition, manner, or duration" in performing the activity. Capobianco v. City of New York, 422 F.3d 47, 57 (2d Cir. 2005) (citing 29 C.F.R. § 1630.2(j)(1)). Plaintiff must be limited to a "considerable" or "large degree" rather than "in only a minor way." Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 196–97 (2002) (cautioning that "substantially limits" should be "interpreted strictly to create a demanding standard") superseded by the ADA Amendments Act of 2008, Pub. L. 110-325, 122 Stat. 3553 (2008).[7] Courts may consider: (i) the nature and severity of the impairment; (ii) the duration of the impairment; and (iii) the permanent or long term impact of the impairment. Id. (citing 29 C.F.R. § 1630(j)(2)). "[I]f a person is taking measures to correct for,

---

[7] On September 24, 2008, Congress enacted the ADA Amendments Act of 2008, Pub. L. 110-325, 122 Stat. 3553 (2008), which explicitly rejects as overly narrow the disability standards articulated by the Supreme Court in Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184 (2002) and Sutton v. United Air Lines, Inc., 527 U.S. 471 (1999). However, the amendments, which took effect January 1, 2009, are not retroactive. See Geoghan v. Long Island R.R., No. 06-CV-1435, 2009 WL 982451, at *8–9 (E.D.N.Y. Apr. 9, 2009) (Pollak, M.J.); see also E.E.O.C. v. Agro Distribution, LLC, 555 F.3d 462, 469 n.8 (5th Cir. 2009); Kiesewetter v. Caterpillar Inc., 295 Fed. Appx. 850, 851 (7th Cir. 2008); Verhoff v. Time Warner Cable, Inc., 299 Fed. Appx. 488, 494 (6th Cir. 2008). Therefore, the laws and interpretations as existed before the amendments govern this case.

8

or mitigate, a physical or mental impairment, the effects of those measures-both positive and negative-<u>must</u> be taken into account." Sutton v. United Air Lines, Inc., 527 U.S. 471, 475, 482–83 (1999) (emphasis added).

Here, plaintiff does not contend that she is entirely unable to work, breathe, sleep and speak. Thus, the only dispute that remains is whether plaintiff, as a result of her asthma, is "significantly restricted as to the condition, manner or duration under which" she can perform these activities. 29 C.F.R. § 1630.2(j)(1). Plaintiff identifies the limitations imposed by her asthma as windedness, wheezing, and asthma attacks. While these effects pose a hardship for plaintiff and indicate that she is, to some extent, limited as compared to an average person, they are not substantial enough to bring plaintiff within the purview of the Rehabilitation Act.

1. <u>Plaintiff's Asthma Did Not Substantially Limit Her Ability to Work</u>

To establish a substantial limitation on her ability to work, plaintiff must show that she is "<u>significantly restricted</u> in the ability to perform either <u>a class of jobs or a broad range of jobs in various classes</u> as compared to the average person having comparable training, skills and abilities." Muller v. Costello, 187 F.3d 298, 312 (2d Cir. 1999) (<u>quoting</u> 29 C.F.R. § 1630.2(j)(3)(i)) (emphasis added). With respect to "a class of jobs," the court must consider the job in which the individual is limited due to the impairment and the number and types of jobs utilizing similar training, knowledge, skills or abilities in the geographic area to which plaintiff has reasonable access. Bartlett v. New York State Board of Law Examiners, 226 F.3d 69, 83 (2d Cir. 2000) (internal citations and quotation marks omitted). "If the plaintiff establishes only 'the inability to perform a single, particular job,' he has failed to establish a substantial impairment to" working. Muller, 187 F.3d at 312 (<u>quoting</u> 29 C.F.R. § 1630.2(j)(3)(i)).

9

Here, plaintiff is not significantly restricted in her ability to perform her actual job of air traffic controller or any jobs within or outside the same class that use similar skills, training and knowledge. The only effect of plaintiff's asthma on her ability to work is that, if she is exposed to secondhand smoke that induces an asthma attack that cannot be relieved by her inhaler, her asthma prevents her from working. However, such incidents have been few and far between. Since plaintiff's daily medication and emergency inhaler largely control her symptoms, plaintiff has only had six asthma-related absences over a three-year span. While regular absences from work could, under certain circumstances, amount to a severe working restriction, plaintiff's absences were too infrequent and intermittent to constitute a substantial limitation on her ability to work. See Mutts v. Southern Connecticut State University, 242 Fed. Appx. 725, 727 (2d Cir. 2007) (holding plaintiff's five asthma-related absences over a five-year period insufficient to establish substantial limitation on any major life activity); Burke v. Niagara Mohawk Power Corp., 142 Fed. Appx. 527, 529 (2d Cir. 2005) (affirming summary dismissal where asthma attacks were infrequent and symptoms were controlled by daily medication); Droutman v. New York Blood Center, Inc., No. 03-CV-5384, 2005 WL 1796120 at *6 (E.D.N.Y. July 27, 2005) (finding no disability where plaintiff's "ten or so asthma attacks were limited to her working environment, self-medicated with an inhaler and plaintiff was "generally capable of performing her job assignments").

Plaintiff's satisfactory job performance further indicates that the impact of plaintiff's asthma on her ability to work is minimal rather than substantial. There is no evidence that her asthma required her to do her job differently than her fellow air traffic controllers. Nor did the asthma preclude plaintiff from performing any specific aspects of her job. Indeed, she was medically cleared for work by numerous FAA physicians throughout her tenure at Teterboro

Tower. Thus, compared to an average person of comparable skill, plaintiff was not limited in her ability to work. See Mutts v. Southern CT State University, No. 04-CV-1746, 2006 WL 1806179, at *6 (D. Conn. June 28, 2006) (finding that no reasonable jury could find that plaintiff's asthma was a substantial limitation on her ability to work where plaintiff admitted that she was reasonably capable of performing her work duties, which required manual labor) aff'd, 242 Fed. Appx. 725 (2d Cir. 2007). Since plaintiff's asthma only limited her in "a minor way" rather than to a "considerable" or "large degree," it did not substantially limit her ability to work as an air traffic controller. Toyota, 534 U.S. at 196–97.

Even if it did, plaintiff's claim fails because she produced no evidence that it significantly restricts her ability to perform jobs in the same class or similar jobs in other classes. Muller, 187 F.3d at 312 (quoting 29 C.F.R. § 1630.2(j)(3)(i)). In the Department of Labor's Standard Occupation Classification, air traffic controller is classified as a "detailed occupation" within a "broad occupation" group that also includes the detailed occupation of airfield operations specialist. See http://www.bls.gov/soc/soc_v0a0.htm, last visited Apr. 21, 2009. Additionally, at least one other federal court in this circuit has determined that "[t]he position of air traffic controller is a single job, not a class of jobs." See Shields v. Robinson-Van Vuren Assoc., Inc., No. 98-CV-8785, 2000 WL 565191, at *5 (S.D.N.Y. May 8, 2000).

Plaintiff appears to concede this point and argues instead that she nevertheless meets the standard because it is "likely" that if she "left her job at the FAA she would be giving up her chosen field of air traffic control" because "the vast majority" of air traffic controllers are employed by the FAA. Pl. Mem. at 10. She urges the Court to follow a case from the District of Hawaii in which the Court held that "[a] person who is disqualified from employment in his chosen field has a substantial handicap to employment, and is substantially limited in one of his

major life activities." E. E. Black, Ltd. v. Marshall, 497 F. Supp. 1088, 1099 (D. Haw. 1980). This holding is inconsistent with the law of this Circuit, which does not confine the inquiry to only plaintiff's chosen field. See Bartlett, 226 F.3d at 83; see also 29 C.F.R. § 1630.2(j)(3)(ii)(B). In any event, the word "field" as used in Marshall still invokes a broader inquiry than plaintiff suggests. It is akin to "class" or "range" jobs. To borrow an analogy from Marshall, chemistry is a field because there are a number of different jobs utilizing similar knowledge and training contained within it. Air traffic controller on the other hand is a single specific job.

Relying on the Court of Appeals decision in Bartlett, plaintiff also argues that the position of "air traffic controller employed by the FAA" constitutes a class of jobs because almost all air traffic controllers must work for the FAA. Pl. Mem. at 11. In Bartlett, the Court found that the plaintiff, who could not take the bar exam because of a reading impairment, was substantially impaired in her ability to work even though she was not excluded from jobs in the legal profession that do not require her to be admitted to the bar, such as law professor or consultant, because those jobs only made up a small minority of jobs in the profession and the vast majority of lawyers are practicing attorneys. 226 F.3d. at 84. However, in coming to this conclusion, the Court reasoned that the extent of the limitations on an impaired individual's ability to work must be ascertained in light of the individual's particular training, knowledge or skills. Id. at 83–84 ("In this case, the pertinent qualification is that Bartlett completed law school and earned a law degree, and we ask whether Bartlett's purported exclusion from the practice of law is a significant restriction relative to the class of jobs utilizing a law degree."). Plaintiff instead urges the Court to define the relevant class of jobs according to the identity of her employer rather than her skills and training. However, she offers no justification for deviating

from the well-established standards. Therefore, because plaintiff is not substantially limited in her ability to serve as an air traffic controller and has not identified any limitation on her ability to perform any other job using similar skills and training, she has failed to establish a substantial impairment to her major life activity of working.

2. <u>Plaintiff is Not Substantially Limited in Her Ability to Breathe, Speak or Sleep</u>

As with working, plaintiff's asthma only impacts her ability to breathe, speak, and sleep during an exacerbation of symptoms. The overwhelming medical evidence indicates that with daily medication, she is able to breathe at the same level as a person without asthma when she is not having an attack. Given the infrequency of plaintiff's attacks, it is clear that during the substantial percentage of the time, there is no limitation on plaintiff's ability to breathe, speak, or sleep.[8] This is further evidenced by the fact that during the relevant period, plaintiff was able to engage in a substantially normal level of physical activity that resulted in no or only minor exacerbation of symptoms, including walking for over thirty minutes, climbing stairs, exercising at a gym, doing chores, and caring for two young daughters and two pets.

Thus, plaintiff's discrete, intermittent, and relatively short exacerbations of symptoms do not impose a substantial limitation on any life activity. See <u>Muller</u>, 187 F.3d at 314 ("Simply put, there is not enough evidence of off-the-job breathing problems to find a substantial

---

[8] Indeed, plaintiff appears to concede that there is no substantial limitation on her ability to sleep and speak as she did not respond to defendant's challenge of these claims in her opposition papers. Moreover, there is no evidence of speech or sleep problems aside from plaintiff's own complaints of minor. Nevertheless, even accepting plaintiff's unsupported claims, her difficulties with sleep and speech do not rise to the level necessary to survive summary judgment. Compare <u>DaPonte v. Manfredi Motors, Inc.</u>, 335 F. Supp. 2d 352, 356 (E.D.N.Y. 2004) (plaintiff with throat cancer who "experienced a change in the quality and tone of his voice, increased frequency in coughing, hoarseness, and throat clearing" was not substantially limited in his ability to speak); <u>Detko v. Blimpies Restaurant</u>, 924 F. Supp. 555, 557 (S.D.N.Y. 1996) (plaintiff who stuttered and had difficulty pronouncing the letter "M" was not substantially limited in his ability to speak) with <u>Stalter v. Board of Cooperative Educ. of Rockland County</u>, 235 F. Supp. 2d 323, 329–30 (S.D.N.Y. 2002) (plaintiff with cerebral palsy who had "a diminished ability to speak coherently" and communicated through sounds, written notes, and an electronic device was substantially limited in his ability to speak); compare <u>Reiger v. Orlor, Inc.</u>, 427 F. Supp. 2d 105, 117-18 (D. Conn. 2006) (plaintiff who generally slept 6 hours per night but "every so often" woke up after 2-3 hours or was unable to sleep at all was not disabled) with <u>Felix v. New York City Transit Auth.</u>, 154 F. Supp. 2d 640, 654 (S.D.N.Y. 2001) (plaintiff who was able to sleep only 1-2 hours per night was disabled).

limitation of that life activity."); Ryan v. Grae & Rybicki, 135 F.3d 867, 871 (2d Cir. 1998) ("[A]lthough Ryan's colitis is a permanent affliction, the fact that it is asymptomatic for long periods, and varies in intensity, weighs against a finding of substantial limitation."); Vinson v. New York City Dept. of Corrections, No. 01-CV-6900, 2006 WL 140553, at *6 (E.D.N.Y. Jan. 17, 2006) (Trager, J.) (rejecting disability claim where asthmatic "provided no evidence that she is limited in her ability to exercise or take part in any recreational activities outside the presence of cigarette smoke"); see also Mutts, 2006 WL 1806179, at *5 ("[A]sthma has been held to give rise to a substantial limitation on the major life activity of breathing only where the plaintiff has a long history of asthmatic attacks and endures numerous and severe restrictions on daily activities as a result of the condition."); Nugent v. Rogosin Institute, 105 F. Supp. 2d 106, 114 (E.D.N.Y. 2000) (reasonable jury could not conclude that asthma substantially limited plaintiff's ability to breathe where she produced no evidence that she could not breathe outside workplace).

**C. Plaintiff's "Regarded As Disabled" Claim Is Not Properly Before the Court**

In her opposition to summary judgment, plaintiff raises a new claim for the first time. She asserts that even if she is not actually disabled within the meaning of the Act, she is entitled to relief because the defendant regarded her as disabled. The Rehabilitation Act defines "disabled" to include persons "regarded as disabled" by their employers. See Heilweil v. Mount Sinai Hosp., 32 F.3d 718, 722 (2d Cir. 1994) (quoting 29 U.S.C. § 706(8)(B)). "[A] person is 'regarded as' disabled . . . if a covered entity mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities." Murphy v. United Parcel Service, Inc., 527 U.S. 516, 521–22 (1999). "[I]t is necessary that a covered entity entertain misperceptions about the individual" in that it believes "that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." Sutton v. United Air

Lines, Inc., 527 U.S. 471, 489 (1999). Where, as here, the major life activity in question is working, a plaintiff must show that the defendant regarded him as "unable to perform a class of jobs." Murphy, 527 U.S. at 525. Showing that the defendant regarded the plaintiff as "unable to perform only a particular job" is insufficient. Id.

Thus, plaintiff's "regarded as disabled" claim may be raised under the Rehabilitation Act. However, "[a] claim must be set forth in the pleadings, in order to give defendants fair notice of the nature of the plaintiff's claim." Thomas v. Egan, 1 Fed. Appx. 52, 54 (2d Cir. 2001). "[I]t is inappropriate to raise new claims for the first time in submissions in opposition to a summary judgment motion." See Beckman v. United States Postal Serv., 79 F. Supp. 2d 394, 407 (S.D.N.Y. 2000); see also DeFilippo v. N.Y.S. Unified Court Sys., No. 06-1561-CV, 2007 WL 1174135, at *1 (2d Cir. Apr. 19, 2007) ("[T]he District Court did not abuse its discretion in prohibiting [plaintiff] from raising a due process claim for the first time" in opposition to summary judgment). A district court has the discretion to disregard such belated claims but may grant plaintiff leave to amend the complaint to incorporate the new claims. Thomas, 1 Fed. Appx. at 54; see also Adams v. Strombecker Corp., No. 97-CV-7018, 1998 WL 381028 at *1 (10th Cir. July 6, 1998) (affirming district court's refusal to consider on summary judgment ADA plaintiff's claim that he was "regarded as" disabled where plaintiff did not plead a "regarded as" claim in his complaint).

Here, plaintiff raised her "regarded as" claim for the first time in opposition to summary judgment. Consequently, defendant did not have an opportunity to fashion discovery toward defense of that claim. See Bonnie & Co. Fashions, Inc. v. Bankers Trust Co., 170 F.R.D. 111, 119 (S.D.N.Y. 1997). The lack of notice is particularly prejudicial in this case because although the claims are similar, the "regarded as" claim implicates additional facts that would be

15

otherwise unnecessary to explore. See Ross v. Campbell Soup Co., 237 F.3d 701 (6th Cir 2001) ("Proving that an employee is regarded as disabled in the major life activity of working takes a plaintiff to the farthest reaches of the ADA. It is a question embedded almost entirely in the employer's subjective state of mind."). Defendant likely would have pursued a different litigation and discovery strategy had it known that plaintiff intended to pursue such a claim. Moreover, plaintiff will not be prejudiced by the Court's decision to disregard this claim at this stage. The instant motion concerns only plaintiff's accommodation and hostile work environment claims. Despite dismissal of those claims, the complaints will survive in light of the retaliation claim and, if plaintiff chooses, she may seek leave to amend the complaint to include a "regarded as disabled" claim.

### III. CONCLUSION

As a matter of law, plaintiff is not disabled within meaning of the Rehabilitation Act for the foregoing reasons. Therefore, defendant's motion for partial summary judgment is granted and plaintiff's Rehabilitation Act claims for failure to accommodate and a failure to prevent a hostile work environment are dismissed. Plaintiff may continue to pursue her remaining claim of unlawful retaliation. Accordingly, counsel are directed to appear before me for a pretrial conference on May 4, 2009 at 12:30 p.m. at 225 Cadman Plaza East Room, 1210S.

SO ORDERED.

Dated: April 21, 2009
Brooklyn, New York

/s/
JOAN M. AZRACK
UNITED STATES MAGISTRATE JUDGE